## Case No. 2,401.

CAREY et al. v. The KITTY.

[Bee, 254.] [1]

District Court, D. South Carolina. March 25, 1808.

LIABILITY OF OWNERS FOR SEAMEN'S WAGES.

The owners of a vessel are liable for wages if the vessel prove insufficient to pay them.

[See Bronde v. Haven. Case No. 1,924; Skolfield v. Potter, Id. 12,925.]

[In admiralty. Libel by Carey and others against the schooner Kitty and her owners].

## Case No. 2,402.

CAREY et al. v. The KITTY.

[Bee, 255.] [1]

District Court, D. South Carolina. April, 1808.

DEATH OF SEAMAN—RIGHTS OF REPRESENTATIVES TO WAGES—DEDUCTION.

1. If a seaman dies before the stipulated voyage is completed, his representatives shall have his wages up to the time of his death, and not beyond it.

[See note at end of case.]

2. A slave entered on board as a seaman, and escaping from the vessel, shall not occasion a deduction from the wages of the rest, by way of contribution.

[See Knap v. The Eliza and Sarah. Case No. 7,873; Brown v. The Neptune, Id. 2,022; Wilson v. The Belvidere, Id. 17,790; Edwards v. Sherman, Id. 4,298.]

[1] [Reported by Hon. Thomas Bee, District Judge.]

[In admiralty. Libel by Carey and others against the schooner Kitty and her owners.

[For decision as to the liability of the owners see next preceding case, No. 2,401.]

Two questions have been argued on behalf of the libelants in this cause.

1. Whether wages shall be paid for Martin Dear, (who died during the voyage, on the coast of Africa) beyond the time of his death. 2. Whether any and what deduction ought to be made from the wages of the rest of the crew, by way of contribution for the loss of a negro slave belonging to the owners, who ran away from the vessel at Sierra Leone, and remained there.

The first point has never been contended for before me till now; the uniform practice having been to allow wages to the time of the seaman's death, and no longer. This has been acquiesced in till some late decisions in the district court of Pennsylvania, determined by the judge of that district, and confirmed by Judge Washington in the circuit court. See 1 Pet. 155 [Scott v. Greenwich, Case No. 12,531]. Without questioning these authorities at present, it may be sufficient to observe that the courts of one state may be allowed to differ from those of another. In this state, the records of the court of admiralty shew that wages of seamen have never been allowed beyond the time of their death. The marine ordinances, quoted on this occasion, vary. The laws of Oleron, Wisbuy, and the Hanse Towns, allow wages to the end of the voyage: those of France, collected by Valin, only to the time of death. Reasons that existed when those laws were framed, may not be applicable in the present state of commerce. Voyages were then much shorter, seldom extending beyond the Mediterranean, the Baltic, the Adriatic, and the coasts of the Atlantic. Seamen engaged themselves for two or three months, out and home, and, in case of death before they returned, the utmost sum claimable by their representatives, was trifling in comparison of what may be due in these days, when voyages are not infrequently extended to one, or two years. Will it, then, be expected that the wages of a seaman who dies at the end of the first month shall be recoverable for the period of a whole year? I think not. It may also be observed that contracts with seamen are merely personal, no mention being made in them of executors, administrators, or assigns. Even in England, the right of these last to any wages does not seem to be settled; Abbot states it as doubtful. It is much to be desired that some general rule be established by congress, or by the decision of the supreme court of the United States: till then, I see no good reason to depart from the former practice in this court, both before and since the revolution. I decree, therefore, that the wages of Martin Dear be allowed up to the time of his death, which, from the evidence produced, happened nearly three

months before the vessel sailed on her return voyage.

As to the second point, the doctrine of contribution is tolerably well settled, that where damage happens to vessel or cargo, mariners must bear their share of the loss. For, freight is the mother of wages, and if embezzlement cause a deduction from the freight, it is reasonable that they who are to be paid from it, should lose in proportion. In the present case, a slave of the owner, who is entered in the ship's articles as one of the seamen, in the station of cook, deserts from the vessel in a foreign port, and obtains his freedom by the laws of that country. For this loss the owner claims a contribution from the wages of the crew. But I do not see how the general principle of contribution can apply to this case. This man was no part of the vessel or cargo; he was shipped as a seaman, and can never be so considered as to authorize the present demand. But it is said that disobedience of orders occasioned the loss; that such neglect of duty amounted to a breach of the contract in the articles, and that, on that score, a deduction should be made. There was, however, no evidence of any orders being given to the crew. The mate, indeed, had directions not to permit any of the crew to go ashore at night; but there is no proof that he gave orders to that effect, and, as he did not return with the ship, he cannot be examined to this point. The discipline on board of this vessel appears to have been very relaxed; there seems to have been no watch appointed for the night when this negro made his escape; if there was, no persons are named as having been upon that watch, and it is possible that the negro himself may have been upon that duty. If so, how can blame attach to the others?

Upon the whole, I see no cause to make any deduction from the wages of the crew on this account; and I decree accordingly.

[NOTE. In Walton v. The Neptune, Case No. 17,135, it was held that, in the event of the death of a seaman, his full wages should be paid to his heirs as if he had served out the whole voyage; the words "his full wages," in the seventh article of the laws of Oleron, being construed to mean his "wages as much as if he had served out the whole voyage." In Scott v. The Greenwich, Id. 12,531, the administrator was allowed wages until the time of the seaman's death, and the balance in dispute lodged in the court until the determination of another case. In Natterstrom v. Hazard, Id. 10,055, it was held that the representatives of a deceased seaman were not entitled to wages beyond the time of his death when the engagement was by the month. But in Sims v. Jackson's Adm'x, Id. 12,890, which was an appeal from the district court, the expression "full wages," in the article of the laws of Oleron referred to, was held to mean "the same wages which the mariner would have been entitled to had he lived, and served out the whole voyage of the vessel;" and that, as the mariner had shipped for the voyage at a certain rate of wages per month, and died before the completion of the voyage, the administratrix was entitled to wages for the entire voyage; and that the monthly rate was no more than a rule to adjust the quantum for the voyage. In The Coriolanus, Id. 7,380, it was held that it was settled law in admiralty that the representatives of a seaman dying on the voyage in the service of the ship were entitled to his wages for the whole voyage. In Writer v. The Richmond, Id. 18,104, the claim of the administrator was rejected because at the time of the shipment as able-bodied the seaman was in fact affected with a severe pulmonic complaint, of which he died on the voyage.]